UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Janet E. Jorgensen and<br>Cynthia Phillips, a married couple,<br><br>        Plaintiff,<br><br>v.<br><br>Michael Montplaisir, in his official capacity as County Auditor of Cass County, North Dakota, Wayne Stenehjem, in his official capacity as Attorney General of North Dakota, Ryan Rauschenberger, in his official capacity as Tax Commissioner of North Dakota, and Jack Dalrymple, in his official capacity as Governor of North Dakota,<br><br>        Defendants. | **Case No. 3-14-CV-58** |

_____

**REPLY MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS**

_____

State of North Dakota
Wayne Stenehjem
Attorney General

By:   Douglas A. Bahr
        Solicitor General
        State Bar ID No. 04940
        Office of Attorney General
        500 North 9th Street
        Bismarck, ND 58501-4509
        Telephone (701) 328-3640
        Facsimile (701) 328-4300
        Email dbahr@nd.gov

Attorneys for Defendants Wayne Stenehjem, in his official capacity as Attorney General, Ryan Rauschenberger, in his official capacity as Tax Commissioner, and Jack Dalrymple, in his official capacity as Governor.

# **TABLE OF CONTENTS AND AUTHORITIES**

**Page(s)**

Statement of the Case ..................................................................................................1

    D.N.D. Civ. L. R. 7.1(A)(1) ................................................................... 1

Arguments ....................................................................................................................1

I.    States define marriage ................................................................................... 1

    United States v. Windsor,
        133 S. Ct. 2675 (2013)........................................................................ 1, 2, 3

    Schuette v. Coalition to Defend Affirmative Action,
        134 S. Ct. 1623 (2014)........................................................................... 2

    Kitchen v. Herbert,
        755 F.3d 1193 (10th Cir. 2014)............................................................... 2

    N.D. Const. art. IV; In re Mangelsen,
        843 N.W.2d 8 (N.D. 2014) ..................................................................... 3

    Montana-Dakota Utils. Co. v. Johanneson,
        153 N.W.2d 414 (N.D. 1967) ................................................................ 3

    Damron v. Damron,
        670 N.W.2d 871 (N.D. 2003) ............................................................. 3, 4

    N.D.C.C. § 14-09-06.6................................................................................ 3

    State ex rel. D.D. v. G.K.,
        611 N.W.2d 179 (N.D. 2000) ................................................................ 4

    N.D.C.C. § 14-09-06.6(5)(b) ..................................................................... 4

II.    Baker v. Nelson is binding precedent ................................................................ 4

    Baker v. Nelson,
        409 U.S. 810 (1972)........................................................................... 4, 5

    United States v. Windsor,
        133 S. Ct. 2675 (2013)............................................................................ 4

    Baker v. Nelson,
        Jurisdictional Stmt., No. 71-1027 (Feb. 11, 1971)................................. 5, 6

    Kitchen v. Herbert,
        755 F.3d 1193 (10th Cir. 2014)............................................................ 5, 7

    Frontiero v. Richardson,
        411 U.S. 677 (1973) ............................................................................... 5

      Romer v. Evans,
           517 U.S. 620 (1996) ................................................................................. 5

      Lawrence v. Texas,
           539 U.S. 558 (2003) ............................................................................ 5, 6

      Windsor v. United States,
           699 F.3d 169 (2d Cir. 2012),
           aff'd, 133 S. Ct. 2675 (2013) ..................................................................... 6

III.    There is no fundamental right to marry someone of the same sex ....................... 7

      Kitchen v. Herbert,
           755 F.3d 1193 (10th Cir. 2014) ................................................................. 7

      Windsor v. United States,
           699 F.3d 169 (2d Cir. 2012),
           aff'd, 133 S. Ct. 2675 (2013) ..................................................................... 7

IV.    No evidence of impermissible motive exists .......................................................... 7

      Windsor v. United States,
           699 F.3d 169 (2d Cir. 2012),
           aff'd, 133 S. Ct. 2675 (2013) ..................................................................... 8

      Kitchen v. Herbert,
           755 F.3d 1193 (10th Cir. 2014) ................................................................. 8

Conclusion ................................................................................................................... 8

**STATEMENT OF THE CASE**

In accordance with D.N.D. Civ. L. R. 7.1(A)(1), Defendants Wayne Stenehjem, in his official capacity as Attorney General, Ryan Rauschenberger, in his official capacity as Tax Commissioner, and Jack Dalrymple, in his official capacity as Governor (collectively "State Defendants"), file this reply to Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. 38). State Defendants do not abandon any arguments or waive any issues raised in their Memorandum in Support of Motion to Dismiss (Doc. 27) or their Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment (Doc. 36) by not repeating them here.

**ARGUMENTS**

**I.    States define marriage.**

Plaintiffs correctly point out that, despite the Supreme Court's extensive discussion of federalism and the States' virtually exclusive authority over marriage laws, the decision in United States v. Windsor, 133 S. Ct. 2675 (2013), is not based on principles of federalism. That, of course, does not negate the accuracy of the law cited in Windsor. More importantly, and ignored by Plaintiffs, is that the Windsor decision is also not based on the Fourteenth Amendment, as are Plaintiffs' claims. Id. at 2696; see also id. at 2705, 2706 (Scalia, J. dissenting) (referring to the "rootless and shifting" justifications of the majority's merits holding and stating the Equal Protection Clause "is not the basis for today's holding").

Plaintiffs correctly quote a portion of a sentence in Windsor while asking the Court to ignore its implication. See Doc. 38 at 22. The partially quoted sentence reads: "After a statewide deliberative process that enabled its citizens to discuss and weigh arguments for and against same-sex marriage, New York acted to enlarge the definition of marriage to correct what its citizens and elected representatives perceived to be an injustice that they had not earlier known or understood." 133 S. Ct. at 2689. What the Supreme Court protected in Windsor is the statewide deliberative process used to

1

define marriage.  Plaintiffs ask that this Court strip North Dakota citizens of their use of the same deliberative process because they reached a different result than New York.  The Supreme Court's recent statement in Schuette v. Coalition to Defend Affirmative Action, 134 S. Ct. 1623, 1637 (2014), bears repeating:

> The respondents in this case insist that a difficult question of public policy must be taken from the reach of the voters, and thus removed from the realm of public discussion, dialogue, and debate in an election campaign.  Quite in addition to the serious First Amendment implications of that position with respect to any particular election, it is inconsistent with the underlying premises of a responsible, functioning democracy.

More troubling is that Plaintiffs' request that this Court supplant the results of North Dakota's deliberative process by making its own legislative findings, and they ask the Court do so without any factual hearing.  Such a radical request must be rejected. See Kitchen v. Herbert, 755 F.3d 1193, 1237-40 (10th Cir. 2014) (Kelly, J. dissenting) (reviewing proper application of rational basis, including that the state has no obligation to produce evidence, and explaining how Utah's traditional marriage laws easily meet that test); id. at 1240 (Kelly, J. dissenting) ("One only need consider the reams of sociological evidence urged by the parties and the scores of amicus briefs on either side to know that the State's position is (at the very least) arguable. It most certainly is not arbitrary, irrational, or based upon legislative facts that no electorate or legislature could conceivably believe.").

Plaintiffs reasonably assert that not permitting same-sex couples to marry may harm children of same-sex couples.  That possibility was, of course, one of many competing considerations the Legislature and the People had to consider and balance when passing North Dakota's marriage laws.  The fact Plaintiffs disagree with the result of the deliberative process, however, does not make the challenged laws unconstitutional.

State Defendants acknowledge, as did the Windsor court, 133 S. Ct. at 2691, that States' authority over marriage does not permit States to pass marriage laws in

2

violation of the United States Constitution. State Defendants have never argued otherwise. State Defendants agree that "if the Constitution contained a provision guaranteeing the right to marry a person of the same sex, it would be [this Court's] duty to enforce that right. But the Constitution simply does not speak to the issue of same-sex marriage." Id. at 2716 (Alito, J., dissenting).

Plaintiffs incorrectly assert the North Dakota Supreme Court, not the North Dakota Legislative Assembly and the People of North Dakota, determine North Dakota public policy. That assertion is contrary to the most fundamental understanding of the branches of government and separation of powers, the North Dakota Constitution, and a long line of cases. See N.D. Const. art. IV; In re Mangelsen, 843 N.W.2d 8, 13 (N.D. 2014) ("It is for the legislature, not the courts, to identify and determine the public policy of the state."); Montana-Dakota Utils. Co. v. Johanneson, 153 N.W.2d 414, 423 (N.D. 1967) ("The Legislature, under our Constitution, is one of three independent branches of government. Under the principle of separation of powers, the authority to pass legislation is vested in the Legislative Branch of the government exclusively. As a part of the law-making power of the Legislative Assembly, it has the right to determine legislative policy."). Moreover, Plaintiffs grossly mischaracterize the state supreme court's decision in Damron v. Damron, 670 N.W.2d 871 (N.D. 2003). Contrary to Plaintiffs' assertion, the supreme court did not hold "a parent's same-sex relationship was irrelevant to child welfare considerations" for custody purposes. Doc. 38 at 29. The supreme court simply reviewed and reversed a district court's factual findings regarding a child custody modification.

In Damron, the North Dakota Supreme Court applied well-settled law in reversing a district court's modification of child custody because the district court did not make appropriate factual findings. The supreme court first noted the public policy regarding custody modifications established by the Legislature, citing N.D.C.C. § 14-09-06.6, and explaining "'[t]he legislature enacted more rigorous requirements for motions brought

3

less than two years after a determination to allow "something of a moratorium for the family" during the two-year period after a custody determination.'" Id. at 874 (quoting State ex rel. D.D. v. G.K., 611 N.W.2d 179, 181 (N.D. 2000)). It then explained the movant for the change in custody "had the burden to show modification was necessary to serve the best interests of the children and to show the children's present environment may endanger their physical or emotional health or impair their emotional development." Id. at 875. The supreme court then found the movant "failed to meet his burden of proof to justify a change in custody under N.D.C.C. § 14-09-06.6(5)(b)." Id. at 876. Because there was no evidence "to support the trial court's modification of custody," the supreme court concluded "the court's modification of custody [was] clearly erroneous." Id.

The North Dakota Supreme Court's review and reversal of a district court's factual findings in a specific case does not establish North Dakota's public policy or legislative findings regarding marriage. That is done by the People through the North Dakota Legislative Assembly, the policy-making branch of the government.

**II.     Baker v. Nelson is binding precedent.**

Plaintiffs attempt to distinguish Baker v. Nelson, 409 U.S. 810 (1972), by asserting the case was "decided long before any state or modern nation permitted same-sex couples to marry." Doc. 38 at 17. The fact no state or nation permitted same-sex marriage at the time Baker was decided has no relevance to the legal issues resolved in the case. Moreover, the undisputed fact that no state or nation permitted same-sex marriage at the time of Baker simply highlights the recent development of same-sex marriage and that it is not deeply rooted in this Nation's history and tradition, weighing strongly against a finding same-sex marriage is a fundamental right. See Windsor, 133 S. Ct. at 2715 (Alito, J., dissenting) ("What Windsor and the United States seek, therefore, is not the protection of a deeply rooted right but the recognition of a very new right, and they seek this innovation not from a legislative body elected by the

4

people, but from unelected judges.").

The Baker plaintiffs specifically claimed that the State's denial of a marriage license "deprive[d] [them] of their liberty to marry . . . under the Fourteenth Amendment" and "violate[d] their rights under the equal protection clause of the Fourteenth Amendment." Baker v. Nelson, Jurisdictional Stmt., No. 71-1027, at 3 (Feb. 11, 1971). "Summary dismissals are merits rulings as to those questions raised in the jurisdictional statement." Kitchen, 755 F.3d at 1232 (Kelly, J. dissenting). "Though the Supreme Court may not accord Baker the same deference as an opinion after briefing and argument, it is nonetheless precedential for this court." Id.

The cases cited by Plaintiffs also do not vitiate Baker's precedential force. Frontiero v. Richardson, 411 U.S. 677, 688 (1973), held classifications based on sex are subject to heightened judicial scrutiny. But the challenged laws do not classify based on sex.

Romer v. Evans, 517 U.S. 620 (1996), had nothing to do with marriage laws and did not mention Baker. Romer involved the elimination of all basic legal protections and rights of access to the ordinary political process normally available to all people within Colorado. Romer applied "conventional" rational basis review in holding that a Colorado constitutional amendment violated equal protection by placing a "[s]weeping" and "unprecedented" ban on state and local laws offering gays and lesbians common protections from discrimination. Id. at 627, 631-32, 633, 635. Laws defining marriage between a man and a woman are not a classification "unprecedented in our jurisprudence." Id. at 633.

Like Romer, Lawrence v. Texas, 539 U.S. 558 (2003), did not address the constitutionality of state marriage laws; it also did not mention Baker. Lawrence held two adults of the same sex had the right to engage in intimate sexual conduct without intervention of the government. The Lawrence court expressly informed lower courts that the case did "not involve whether the government must give formal recognition to

5

any relationship that homosexual persons seek to enter." Id. at 578; see also id. at 585 (O'Connor, J., concurring) (noting that "preserving the traditional institution of marriage" would be a legitimate state interest beyond moral disapproval).

Windsor also makes no mention of Baker and certainly does not inform lower courts that they are no longer bound by Baker. Windsor dealt with the constitutionality of a federal law defining marriage, not a state law. See Windsor v. United States, 699 F.3d 169, 178 (2d Cir. 2012), aff'd, 133 S. Ct. 2675 (2013) ("The question whether the federal government may constitutionally define marriage . . . is sufficiently distinct from the question in Baker: whether same-sex marriage may be constitutionally restricted by the states."). The Windsor majority expressly disclaimed any intention to reach the issue decided in Baker, stating that its "opinion and its holding are confined to those lawful marriages" already authorized by state law. 133 S. Ct. at 2696. "State and lower federal courts should take the Court at its word and distinguish away." Id. at 2709 (Scalia, J., dissenting) ("Lord, an opinion with such scatter-shot rationales as this one (federalism noises among them) can be distinguished in many ways."); see also id. at 2706 (Scalia, J., dissenting) ("Moreover, if this is meant to be an equal-protection opinion, it is a confusing one. The opinion does not resolve and indeed does not even mention what had been the central question in this litigation: whether, under the Equal Protection Clause, laws restricting marriage to a man and a woman are reviewed for more than mere rationality.").

If the intent of the Supreme Court in any of the above cases was to overrule or limit Baker, the Court would have at least mentioned Baker. It did not in any of the cases. In fact, in both Lawrence and Windsor the Court unequivocally stated it was not addressing the issue of same-sex marriage. 133 S. Ct. at 2696; 539 U.S. at 578. As Judge Kelly correctly wrote:

> [N]one of these developments can override our obligation to follow (rather than lead) on the issue of whether a state is required to extend marriage to same-gender couples. At best, the developments relied upon are

6

ambiguous and certainly do not compel the conclusion that the Supreme Court will interpret the Fourteenth Amendment to require every state to extend marriage to same-gender couples, regardless of contrary state law.

Kitchen, 755 F.3d at 1233 (Kelly, J. dissenting).

### III. There is no fundamental right to marry someone of the same sex.

Plaintiffs cite multiple cases regarding the fundamental right to marry. State Defendants acknowledge the Supreme Court has found there is a fundamental right to marry. The Supreme Court's cases regarding the fundamental right to marry, however, cannot be evaluated devoid of context. While the Supreme Court has recognized a fundamental right to marriage, it is undisputed that every decision vindicating that right has involved two persons of the opposite gender. "[N]othing suggests that the term 'marriage' as used in those cases had any meaning other than what was commonly understood for centuries. Courts do not decide what is not before them." Kitchen, 755 F.3d at 1234 (Kelly, J. dissenting).

Plaintiffs may read Windsor as indicating a majority of the Supreme Court is willing to create a fundamental right to same-sex marriage. Windsor, however, did not decide that issue. 133 S. Ct. at 2696. "It certainly did not require every state to extend marriage to same-gender couples, regardless of the contrary views of the electorate and their representatives." Kitchen, 755 F.3d at 1235 (Kelly, J. dissenting). This Court should not announce a new fundamental right based on Plaintiffs' speculation what the Supreme Court may decide in the future; it should follow current Supreme Court precedent, which has never held there is a fundamental right to same-sex marriage. See id. ("But we should be reluctant to announce a fundamental right by implication. Not only is that beyond our power, it is completely arbitrary and impractical.").

### IV. No evidence of impermissible motive exists.

Without any evidence, and contrary to well-established case law, Plaintiffs ask the Court to ascribe illicit motives to passage of North Dakota's marriage laws. The Court should decline Plaintiffs' invitation.

7

Plaintiffs use or quote words like "irrational prejudice," "impermissibly motivated," and "born of animosity" to describe the People and Legislators' motivation for passing North Dakota's marriage laws. Doc. 38 at 25, 26. Yet they provide no evidence to support such accusations. Absent "convincing evidence" that the principal purpose of North Dakota's marriage laws "was to codify malice, and that it furthered <u>no</u> legitimate government interests," the political branches and People should not be tarred "with the brush of bigotry." <u>Windsor</u>, 133 S. Ct. at 2696 (Roberts, J., dissenting). But the multiple rationales previously articulated for North Dakota's marriage laws "give the lie to the . . . conclusion that only those with hateful hearts could have voted" in favor of the laws. <u>Id.</u> at 2707 (Scalia, J., dissenting); <u>see also</u> <u>Kitchen</u>, 755 F.3d at 1236-40 (Kelly, J. dissenting) (addressing rational basis for Utah's traditional marriage laws).

## **CONCLUSION**

Defendants Wayne Stenehjem, in his official capacity as Attorney General, Ryan Rauschenberger, in his official capacity as Tax Commissioner, and Jack Dalrymple, in his official capacity as Governor, respectfully request that this Court grant State Defendants' Motion to Dismiss (Doc. 24) and deny Plaintiffs' Motion for Summary Judgment (Doc. 13).

Dated this 4th day of September, 2014.

    State of North Dakota
    Wayne Stenehjem
    Attorney General

By:    /s/ Douglas A. Bahr
    Douglas A. Bahr
    Solicitor General
    State Bar ID No. 04940
    Office of Attorney General
    500 North 9th Street
    Bismarck, ND 58501-4509
    Telephone (701) 328-3640
    Facsimile (701) 328-4300
    Email dbahr@nd.gov

Attorneys for Defendants Wayne Stenehjem, in his official capacity as Attorney General, Ryan Rauschenberger, in his official capacity as Tax Commissioner, and Jack Dalrymple, in his official capacity as Governor.

9

## CERTIFICATE OF SERVICE

## Case No. 3-14-CV-58

I hereby certify that on September 4, 2014, the following document: **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** was filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to John P. Borger and Scott Porsborg.

    /s/ Douglas A. Bahr
Douglas A. Bahr
Solicitor General
State Bar ID No. 04940
Email dbahr@nd.gov

e:\dixie\cl\bahr\briefs\constitution.brf\jorgensen\pleadings\motion to dismiss reply memorandum.docx

9