IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| JANET E. JORGENSEN and CYNTHIA A. PHILLIPS, a married couple,<br><br>       Plaintiffs,<br><br>*versus*<br><br>MICHAEL MONTPLAISIR, in his official capacity as County Auditor of Cass County, North Dakota,<br><br>WAYNE STENEHJEM, in his official capacity as Attorney General of North Dakota,<br><br>RYAN RAUSCHENBERGER, in his official capacity as Tax Commissioner of North Dakota, and<br><br>JACK DALRYMPLE, in his official capacity as Governor of North Dakota,<br>       Defendants. | CASE NO. 3:14-cv-00058-RRE-KKK |

**PLAINTIFFS' REPLY IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ..................................................................................................................i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION .........................................................................................................................1

ARGUMENT .................................................................................................................................1

    I.    Jan and Cindy Seek the Same Fundamental Right to Marital Recognition As All Other North Dakotans ................................................................................ 1

    II.    Neither Citizens v. Bruning nor Baker v. Nelson Control this Case ..................... 3

    III.    North Dakota's Marriage Ban Cannot Survive Even Rational Basis Review, Let Alone the Elevated Scrutiny Required ............................................... 4

        A.    The Principal Purpose of the Marriage Ban Was the Illegitimate Aim of Imposing Inequality on Same-Sex Couples ......................................................4

        B.    Defendants' Purported Rational Bases Related to Procreation and Different-Sex Parents Have Been Repeatedly Rejected As Justifications for Refusing to Recognize Marriages of Same-Sex Couples ......................................................................................................6

    IV.    Recognition of a Marriage Entered Into Out-of-State Is an Essential Part of Jan and Cindy's Constitutionally Protected Liberty.......................................... 9

CONCLUSION ..........................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Baker v. Nelson*,
 409 U.S. 810 (1972) ..........................................................................................................3

*Barnstone v. Univ. of Houston*,
 446 U.S. 1318 (1980) ........................................................................................................4

*Baskin v. Bogan*,
 Nos. 14-2386 to 14-2388, 2014 WL 4359059 (7th Cir. Sept. 4, 2014) ................. 1, 4, 6, 7

*Bd. of Trs. of the Univ. of Ala. v. Garrett*,
 531 U.S. 356 (2001) ..........................................................................................................5

*Bishop v. Smith*,
 Nos. 14-5003 & 14-5006, 2014 WL 3537847 (10th Cir. July 18, 2014) ..........................5

*Bostic v. Rainey*,
 970 F. Supp. 2d 456 (E.D. Va. 2014), *aff'd sub nom.*, *Bostic v. Schaefer*, 2014 WL 3702493 ..................8

*Bostic v. Schaefer*,
 --- F.3d ----, No. 14-1167, 2014 WL 3702493 (4th Cir. July 28, 2014) ..........................1

*Califano v. Westcott*,
 443 U.S. 76 (1979) ............................................................................................................2

*Citizens for Equal Protection v. Bruning*,
 455 F.3d 859 (8th Cir. 2006) .............................................................................................3

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
 473 U.S. 432 (1985) ..........................................................................................................6

*De Leon v. Perry*,
 975 F. Supp. 2d 632 (W.D. Tex. 2014) .............................................................................9

*Deboer v. Snyder*,
 973 F. Supp. 2d 757 (E.D. Mich. 2014) ............................................................................9

*Graves v. Barnes*,
 405 U.S. 1201 (1972) ........................................................................................................4

*Herbert v. Kitchen*,
 134 S. Ct. 893 (2014) ........................................................................................................3

*Hollingsworth v. Perry*,
 133 S. Ct. 2652 (2013) ......................................................................................................4

*J.E.B. v. Ala. ex rel. T.B.*,
  511 U.S. 127 (1994) ................................................................................................................. 2

*Kitchen v. Herbert*,
  No. 13-4178, 2014 WL 2868044 (10th Cir. June 25, 2014) ............................................. 1, 5

*Latta v. Otter*,
  No. 1:13-cv-00482-CWD, 2014 WL 1909999 (D. Idaho May 13, 2014), *appeal docketed*,
  Nos. 14-35420, 14-35421 (9th Cir. May 15, 2014) ............................................................. 5

*Lawrence v. Texas*,
  539 U.S. 558 (2003) ................................................................................................................. 6

*Loving v. Virginia*,
  388 U.S. 1 (1967) ................................................................................................................ 9, 10

*McQuigg v. Bostic*,
  --- S. Ct. ----, No. 14A196, 2014 WL 4096232 (Aug. 20, 2014) ....................................... 3

*Orr v. Orr*,
  440 U.S. 268 (1979) ................................................................................................................. 2

*Pers. Adm'r of Mass. v. Feeney*,
  442 U.S. 256 (1979) ................................................................................................................. 6

*Planned Parenthood v. Casey*,
  505 U.S. 833 (1992) ................................................................................................................. 9

*Romer v. Evans*,
  517 U.S. 620 (1996) ................................................................................................................. 6

*Turner v. Safley*,
  482 U.S. 78 (1987) ................................................................................................................... 3

*U.S. Dep't of Agric. v. Moreno*,
  413 U.S. 528 (1973) ................................................................................................................. 6

*United States v. Virginia*,
  518 U.S. 515 (1996) ................................................................................................................. 2

*United States v. Windsor*,
  133 S. Ct. 2675 (2013) ..................................................................................................... passim

*Weber v. Aetna Cas. & Sur. Co.*,
  406 U.S. 164 (1972) ................................................................................................................. 8

*Zablocki v. Redhail*,
  434 U.S. 374 (1978) ............................................................................................................... 10

**STATE CASES**

*Damron v. Damron*,
  670 N.W.2d 871 (N.D. 2003)..................................................................................................8

*Green v. State*,
  58 Ala. 190 (1877) ...................................................................................................................2

*In re Estate of Jensen*,
  162 N.W.2d 861 (N.D. 1968)..................................................................................................8

*Luick v. Arends*,
  132 N.W. 353 (N.D. 1911) ....................................................................................................10

*McDowell v. McDowell*,
  670 N.W.2d 876 (N.D. 2003)..................................................................................................2

*Pearson v. Pearson*,
  606 N.W.2d 128 (N.D. 2000)................................................................................................10

*Rustad v. Rustad*,
  849 N.W.2d 607 (N.D. 2014)..................................................................................................2

**STATE STATUTES**

N.D. Cent. Code § 14-09-29(1) .....................................................................................................2

N.D. Cent. Code § 14-15-14(1)(b) ................................................................................................8

N.D. Cent. Code § 30.1-04-19.......................................................................................................8

**OTHER AUTHORITIES**

Brief of *Amicus Curiae* Am. Sociological Ass'n in Supp. of Resp'ts, *Hollingsworth v. Perry*,
  Nos. 12-144 & 12-307, 2013 WL 4737188 (2013) ...............................................................9

Letter from Gene Schaerr, Office of the Att'y Gen., State of Utah, to Elizabeth A.
  Shumaker, Clerk of Court, 10th Cir. (Apr. 9, 2014), *available at*
  http://www.scribd.com/doc/217364630/Letter-from-Utah-Attorney-General-s-Office-
  to-limit-citation-of-Regnerus-study-in-Amendment-3-appeal ............................................9

N.D. Att'y Gen. Op. No. 2013-L-06 **(**Dec. 12, 2013) ................................................................5

# INTRODUCTION

Plaintiffs Janet Jorgensen ("Jan") and Cynthia Phillips ("Cindy") (together, "Plaintiffs") have suffered, and continue to suffer, numerous tangible and dignitary harms as a result of North Dakota's refusal to recognize their valid out-of-state marriage. Defendants' assertion that "the lives of Plaintiffs . . . and how they subjectively feel" are not "legally material to resolving the issues before the Court," (DE 36, at 1), ignores that the marriage ban deprives them and other married same-sex couples of equal dignity and autonomy, brands them as inferior to other married couples in North Dakota, and stigmatizes them in violation of their constitutional guarantees of liberty and equality. The U.S. Supreme Court, and numerous federal courts since, have recognized the dignitary harm imposed on same-sex couples when government targets them for denial of marital recognition, and thereby relegates them to a "second-tier" status. *See, e.g.*, *United States v. Windsor*, 133 S. Ct. 2675, 2694-95 (2013); *Baskin v. Bogan*, Nos. 14-2386 to 14-2388, 2014 WL 4359059 (7th Cir. Sept. 4, 2014); *Bostic v. Schaefer*, --- F.3d ----, No. 14-1167, 2014 WL 3702493 (4th Cir. July 28, 2014); *Kitchen v. Herbert*, No. 13-4178, 2014 WL 2868044 (10th Cir. June 25, 2014). Defendants have not, and cannot, provide any constitutionally sufficient justification for upholding the marriage ban and continuing to violate Jan and Cindy's constitutional rights. Accordingly, this Court should grant Plaintiffs' Motion for Summary Judgment and declare that North Dakota's refusal to respect same-sex couples' valid out-of-state marriages violates constitutional guarantees of due process and equal protection.

# ARGUMENT

## I. Jan and Cindy Seek the Same Fundamental Right to Marital Recognition As All Other North Dakotans.

Defendants' attempt to frame this case as involving "two mutually exclusive and profoundly different marriage institutions" takes an improperly narrow view of the liberty interests at stake in this case. (DE 36, at 2.) Jan and Cindy seek the same recognition of their existing marriage that any different-sex couple who married in Minnesota would receive. They wish merely to "occupy the

1

same status and dignity as that of a man and woman in lawful marriage," and to "live with pride in themselves and their union and in a status of equality with all other married persons." *Windsor*, 133 S. Ct. at 2689. In other words, Plaintiffs seek to access the same fundamental right to be married that the Supreme Court has recognized and protected for generations. (DE 14, at 10-12; DE 38, at 10-11.) The Supreme Court has made clear that the liberty interest at stake in marriage cases is freedom of choice of whom to marry, in recognition of the respect for the autonomy that the Constitution commands when it comes to personal decisions about with whom a person will build a life and a family. (DE 38, at 10-11.) The liberty interest at issue is not one of "same-sex" or "genderless" marriage, but simply one of marriage.

Defendants' "two competing marriage institutions" argument further fails because it rests on the inexplicable assertion that permitting same-sex couples to marry would "necessarily displace" or "preclude" what Defendants term the "man-woman marriage institution."[1] (DE 36, at 2-3.) Thus, as with many earlier institutional exclusions, Defendants insist that the traditional rules for entry are only natural, and without them the institution would lose its essence, adherents, and luster.[2]

---

[1] Defendants' theory that marriage requires "gender-complementarity" relies upon particular gendered expectations and roles for marriage, which carry with them the "baggage of gender stereotypes" that the Supreme Court has repeatedly held to be impermissible. *See Califano v. Westcott*, 443 U.S. 76, 89 (1979) (quoting *Orr v. Orr*, 440 U.S. 268, 283 (1979)); *see also, J.E.B. v. Ala. ex rel. T.B.*, 511 U.S. 127 (1994) (equal protection forbids state reliance on stereotypes and generalizations about men and women). Moreover, apart from the marriage ban, North Dakota's laws long have forbidden differential treatment of spouses and parents based on sex. *See, e.g.*, N.D. Cent. Code § 14-09-29(1) (prohibiting gender-based presumptions in custody matters); *Rustad v. Rustad*, 849 N.W.2d 607, 612 (N.D. 2014) (court may not "subscribe to sex-based rules that are themselves based on sexual stereotypes") (citations omitted); *McDowell v. McDowell*, 670 N.W.2d 876, 881 (N.D. 2003) (public policy prohibits gender bias in custody decisions). Men and women in North Dakota now have the same marital rights and obligations, including with respect to children. There is not even a rational reason, let alone a compelling or important one, for requiring spouses to be of different genders.

[2] *See, e.g.*, *United States v. Virginia*, 518 U.S. 515, 542-44 (1996) ("The notion that admission of women would downgrade VMI's stature, destroy the adversative system and, with it, even the school, is a judgment hardly proved, a prediction hardly different from other 'self-fulfilling prophec[ies],' once routinely used to deny rights or opportunities.") (footnotes and citations omitted); *Green v. State*, 58

Defendants, however, fail to articulate any empirical or even reasoned basis to support these notions and ignore that same-sex couples currently may marry in 19 states and the District of Columbia without "displac[ing]" or "preclud[ing]" anyone else's marriage.[3] Jan and Cindy have chosen to marry for the same reasons as countless other North Dakotans, and their marriage shares all the signal attributes identified by the Supreme Court as elements of a "constitutionally protected marital relationship": "emotional support;" an expression of "personal dedication" and "public commitment;" "spiritual" or "religious" significance; an expectation of shared sexual intimacy; and a "precondition" to numerous tangible and "intangible" government benefits. *See Turner v. Safley*, 482 U.S. 78, 96 (1987). Defendants' unsupported contention that same-sex couples would damage or supplant the institution of marriage should be rejected.

> **II.     Neither *Citizens v. Bruning* nor *Baker v. Nelson* Control this Case.**

As in their Motion to Dismiss, Defendants' Response to Plaintiffs' Motion for Summary Judgment relies heavily on the decisions in *Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8th Cir. 2006) and *Baker v. Nelson*, 409 U.S. 810 (1972). (DE 36, at 4-11.) But, both decisions have been superseded by more recent doctrinal developments, including the Supreme Court's decision in *Windsor*, and in any event, are otherwise distinguishable from the case before this Court. (DE 38, at 6-10; *see also* DE 27, at 10.) Defendants' new argument that the Supreme Court's recent stay orders in *Herbert v. Kitchen*, 134 S. Ct. 893 (2014), and *McQuigg v. Bostic*, --- S. Ct. ----, No. 14A196, 2014 WL 4096232 (Aug. 20, 2014), demonstrate that *Baker* is still controlling is equally unavailing. (DE 36, at

---

Ala. 190, 194 (1877) (rejecting constitutional challenge to anti-miscegenation law, citing fear that permitting interracial marriage would damage the institution of marriage itself).

[3] Given these jurisdictions' inclusion of same-sex couples in the right to marry, it is the marriage ban itself that impermissibly divides all married couples into two "competing" groups: those whose marriages the State will respect (different-sex couples) and those the State will not respect (same-sex couples). This was precisely the constitutional error committed by Congress in enacting DOMA. To paraphrase *Windsor*, "What the State of [Minnesota] treats as alike [North Dakota] law deems unlike by a law designed to injure the same class [Minnesota] seeks to protect." 133 S. Ct. at 2692.

3

7.) These stay orders contain no analysis and do not cite *Baker*. A decision on a motion for a stay "should not be taken as expressing a view on the merits of the questions raised in [a] case."[4] *See Barnstone v. Univ. of Houston*, 446 U.S. 1318, 1319 (1980) (Powell, J., in chambers) (citing *Graves v. Barnes*, 405 U.S. 1201, 1204 (1972)). As noted in *Baskin*, "*Baker* was decided in 1972—42 years ago and the dark ages so far as litigation over discrimination against homosexuals is concerned. Subsequent decisions . . . are distinguishable from the present [marriage] cases but make clear that *Baker* is no longer authoritative." 2014 WL 4359059, at *7.

### III. North Dakota's Marriage Ban Cannot Survive Even Rational Basis Review, Let Alone the Elevated Scrutiny Required.

Even if this Court applies rational basis review, which it should not, the marriage ban cannot stand, as Plaintiffs have explained in both their MSJ and Opp. to MTD. (DE 14, at 22-30; DE 38, at 16-24.) Defendants misunderstand the role and meaning of animus in this constitutional analysis, and the state's alleged interest in responsible procreation and biological parenting has been repeatedly rejected as justification for a marriage ban. As the Seventh Circuit held, this rationale "is so full of holes that it cannot be taken seriously. . . . The discrimination against same-sex couples is irrational, and therefore unconstitutional even if the discrimination is not subjected to heightened scrutiny[.]" *Baskin*, 2014 WL 4359059, at *3.

#### A. The Principal Purpose of the Marriage Ban Was the Illegitimate Aim of Imposing Inequality on Same-Sex Couples.

Defendants mischaracterize "animus," as it is used in constitutional doctrine, and the role that it plays in this case. (DE 36, at 11-12.) A finding of animus or improper purpose does not require overt hostility. (DE 14, at 23.) Indeed, Justice Kennedy has described it this way:

---

[4] As Plaintiffs previously explained (DE 38, at 9), more relevant is the Supreme Court's grant of *certiorari* in *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013). That the Court allowed briefing and argument before disposing of the case on standing grounds and before allowing the district court's opinion striking down California's marriage ban on equal protection and due process grounds to stand is inconsistent with a determination that the case presented no substantial federal question.

4

> Prejudice, we are beginning to understand, rises not from malice or hostile animus alone. It may result as well from insensitivity caused by simple want of careful, rational reflection or from some instinctive mechanism to guard against people who appear to be different in some respects from ourselves. Quite apart from any historical documentation, knowledge of our own human instincts teaches that persons [who are different from ourselves] might at first seem unsettling to us, unless we are guided by the better angels of our nature. There can be little doubt, then, that [such] persons . . . are confronted with prejudice which can stem from indifference or insecurity as well as from malicious ill will.

*Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 374-75 (2001) (Kennedy, J., concurring).

Defendants admit that North Dakota's marriage ban was passed for the purpose of "ensuring that courts cannot interpret North Dakota's marriage laws to apply to same-gender couples." (DE 36, at 14.) Thus, the marriage ban's "principal effect is to identify a subset of state-sanctioned marriages and make them unequal. The principal purpose is to impose inequality, and not for other reasons like governmental efficiency." *Windsor*, 133 S. Ct. at 2694. Like many other state marriage bans and the federal DOMA struck down in *Windsor*, the North Dakota marriage ban was passed in order to prevent North Dakota from having to recognize marriages of same-sex couples in the wake of Hawaii litigation on behalf of same-sex couples seeking to marry. *See* N.D. Att'y Gen. Op. No. 2013-L-06, at 4 (Dec. 12, 2013). This is precisely the impermissible "interference with the equal dignity of same-sex marriages" that the Supreme Court rejected in *Windsor* and has since been cited by other federal courts in striking down similar marriage bans. 133 S. Ct. at 2693; *see also Kitchen*, 2014 WL 2868044, at *30; *Bishop v. Smith*, Nos. 14-5003 & 14-5006 , 2014 WL 3537847 (10th Cir. July 18, 2014); *Latta v. Otter*, No. 1:13-cv-00482-CWD, 2014 WL 1909999 (D. Idaho May 13, 2014), *appeal docketed*, Nos. 14-35420, 14-35421 (9th Cir. May 15, 2014).

The statements by a few legislators professing to have gay friends or expressing hope that no one would construe their actions as "gay-bashing" cannot immunize the marriage ban from a finding that it serves the impermissible purpose of imposing a disability on a disfavored group. On its face, the text and purpose of North Dakota's ban reflect the "bare . . . desire to harm a politically

5

unpopular group." *Windsor*, 133 S. Ct. at 2693; *see also Romer v. Evans*, 517 U.S. 620, 633 (1996); *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 447 (1985); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973).[5]

That North Dakota law has never allowed same-sex couples to marry also cannot save the ban; legislators chose to single out same-sex couples to deprive their out-of-state marriages of the comity that otherwise would apply, and to constitutionalize this discrimination. When a state "reaffirm[s] a particular course of action . . . because of . . . its adverse effects [on] an identifiable group," it implicates constitutional guarantees. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (internal quotations omitted). As the Supreme Court repeatedly has explained, "the fact that the governing majority in a State has traditionally viewed a particular practice as immoral is no sufficient reason for upholding a law prohibiting the practice; neither history nor tradition could save a law prohibiting miscegenation from constitutional attack." *Lawrence v. Texas*, 539 U.S. 558, 577-78 (2003); *see also Baskin*, 2014 WL 4359059, at *19 ("Minorities trampled on by the democratic process have recourse to the courts; the recourse is called constitutional law.").

> **B.    Defendants' Purported Rational Bases Related to Procreation and Different-Sex Parents Have Been Repeatedly Rejected As Justifications for Refusing to Recognize Marriages of Same-Sex Couples.**

Aside from asking this Court to "proceed cautiously," which is not a valid justification (DE 38, at 21-25),[6] Defendants argue that there are two other rational bases for refusing to recognize marriages of same-sex couples, namely promotion of: (1) "responsible procreation," and (2) optimal

---

[5] As *Windsor* illustrates, a court may find a statute unconstitutional as impermissibly motivated even though "until recent years, many citizens had not even considered the possibility that two persons of the same sex might aspire to occupy the same status and dignity as that of a man and a woman in lawful marriage." 133 S. Ct. at 2689; *see also id.* at 2689, 2693 (explaining that although permitting same-sex couples the freedom to marry was the result of a "new perspective" and "new insight," and no state permitted same-sex couples to marry at the time of DOMA's enactment, "[t]he history of DOMA's enactment and its own text demonstrate that interference with equal dignity of same-sex marriages . . . was more than an incidental effect of the federal statute. It was its essence.").

[6] *See Baskin*, 2014 WL 4359059, at *16-19 (rejecting "proceeding with caution" as a justification).

6

parenting by a biological mother and father. (DE 36, at 21.) These are not even legitimate, let alone compelling, justifications for the marriage ban. (DE 14, at 25-29; DE 38, at 18-21.)

North Dakota law itself demonstrates the absence of any connection whatsoever between the marriage ban and any asserted state interest in encouraging different-sex couples to procreate responsibly within marriage, or in encouraging child-rearing by supposedly "optimal" biological parents. This is not an example of mere over- or under-inclusion; there is no connection whatsoever. North Dakota law does not condition anyone's right to marry, let alone recognition of out-of-state marriages, on the parties' abilities or intentions for having or rearing children. (DE 14, at 25-26; DE 38, at 18-20).

As numerous courts have pointed out, depriving same-sex couples of respect for their marriages does not incentivize any non-gay parent to marry or rear his or her child better; nor does it increase the number of children reared by married different-sex biological parents. (DE 14, at 26-27; DE 38, at 18-20). In short, any asserted connection between the marriage ban and the marital or procreative decisions of non-gay couples defies logic.[7] (DE 14, at 26-27.) What the ban ***does*** do, however, is ***harm*** the children of same-sex couples by branding their families as inferior and unworthy of marriage. (DE 38, at 19); *see also Baskin*, 2014 WL 4359059, at *5-7 (discussing bans' harm to the children of same-sex couples).

Defendants want it both ways—they concede that marriage provides "valuable social benefits" to the children of married parents (DE 36, at 2), but then seek to deny those same benefits to children reared by same-sex couples. Defendants offer no explanation for why children of same-sex couples are any less deserving of the "valuable social benefits important to the well-being and stability of society and the development of children" that they acknowledge marriage provides. (*Id.*

---

[7] Because of this total lack of connection between marriage and procreation, Defendants' argument that same-sex and different-sex couples are not similarly situated based on the "most basic biological differences" in procreative capacity must fail. (DE 36, at 30-32.)

at 27.) The State may not privilege one class of children over another simply because of the circumstances of their conception and birth, the status or conduct of their parents, or whether their parent-child relationships are biological or adoptive. *See, e.g.*, *Weber v. Aetna Cas. & Sur. Co.*, 406 U.S. 164, 175 (1972) (disparate treatment of children of unmarried parents based on the conduct or status of their parents warrants heightened scrutiny and violates the Equal Protection Clause); *In re Estate of Jensen*, 162 N.W.2d 861, 878 (N.D. 1968) (holding that intestacy statute excluding non-marital grandchildren from inheriting "punishes innocent children for their parents' transgressions, has no place in our system of government, which has as one of its basic tenets equal protection for all"); *Damron v. Damron*, 670 N.W.2d 871 (N.D. 2003) (parent's sexual orientation cannot be determinative of child custody); N.D. Cent. Code § 14-15-14(1)(b) (adoption establishes same parent-child relationship as biology); N.D. Cent. Code § 30.1-04-19 (establishing parent-child relationship with non-biological intended parent of child born through assisted reproduction).

Defendants try to justify their preference for biological parenting by misrepresenting the consensus among social scientists and all major medical, pediatric, and child welfare organizations that children of same-sex couples fare just as well as children of different-sex couples, and that there is no difference in the parenting abilities of same-sex couples and different-sex couples. Other courts have surveyed the evidence on this issue and concluded that it is not a matter on which a legislature could rationally reach multiple conclusions, but rather a clearly settled fact based on decades of peer-reviewed scientific research. (*See* DE 14, at 27-28.) As court after court has recognized, it is "accepted beyond serious debate" that children are raised just as "optimally" by same-sex couples as they are by different-sex couples. *See, e.g.*, *Bostic v. Rainey*, 970 F. Supp. 2d 456,

478 (E.D. Va. 2014), *aff'd sub nom.*, *Bostic v. Schaefer*, 2014 WL 3702493; *De Leon v. Perry*, 975 F. Supp. 2d 632, 653 (W.D. Tex. 2014); DE 14, at 27-28.[8]

## IV. Recognition of a Marriage Entered Into Out-of-State Is an Essential Part of Jan and Cindy's Constitutionally Protected Liberty.

The Supreme Court's decision in *Loving v. Virginia* wholly undermines Defendants' spurious argument that North Dakota has a sovereign right to reject Jan and Cindy's marriage. (DE 36, at 32, 33.) Just like Jan and Cindy, Mildred and Richard Loving traveled to a nearby jurisdiction in order to enter into a marriage that was expressly prohibited and denied recognition by their home state. The Supreme Court in *Loving* struck down not only Virginia's law prohibiting interracial marriages within the state, but also its statutes denying recognition to and criminally punishing such marriages entered outside the state. 388 U.S. 1, 4, 12 (1967). The Court recognized that the fundamental right to marry must protect a couple *already* married, even though anti-miscegenation laws enjoyed deep historical roots. *Id.* at 2-3; *see also Planned Parenthood v. Casey*, 505 U.S. 833, 847-48 (1992) ("Marriage is mentioned nowhere in the Bill of Rights and interracial marriage was illegal in most States in the 19th century, but the Court was no doubt correct in finding it to be an aspect of liberty protected against state interference by the substantive component of the Due Process Clause[.]"). Significantly,

---

[8] In the face of such overwhelming consensus, Defendants cite discredited "studies" by persons who have been found after trial to be "entirely unbelievable and not worthy of serious consideration." *Deboer v. Snyder*, 973 F. Supp. 2d 757, 766 (E.D. Mich. 2014). In *Deboer*, the court evaluated testimony by Mark Regnerus and Douglas Allen concerning the articles cited by Defendants (DE 36 at 22-23), and concluded that Regnerus' "study" (quotes in the original) was "flawed on its face" and reached conclusions at the behest of an ideological funder who solicited the "study" specifically to assist in defending marriage bans in court against constitutional attack. The court was similarly unable to accord Allen's testimony "any significant weight," finding his testimony, like that of Regnerus, to "represent a fringe viewpoint that is rejected by the vast majority of their colleagues across a variety of social science fields." *Id.* at 768; *see also* Brief of *Amicus Curiae* Am. Sociological Ass'n in Supp. of Resp'ts, *Hollingsworth v. Perry*, Nos. 12-144 & 12-307, 2013 WL 4737188, at *16-21 (2013) (Regnerus articles fundamentally flawed); Letter from Gene Schaerr, Office of the Att'y Gen., State of Utah, to Elizabeth A. Shumaker, Clerk of Court, 10th Cir. (Apr. 9, 2014), *available at* http://www.scribd.com/doc/217364630/Letter-from-Utah-Attorney-General-s-Office-to-limit-citation-of-Regnerus-study-in-Amendment-3-appeal (disavowing State of Utah's reliance on the Regnerus studies in briefs to the Tenth Circuit after his work was revealed to lack credibility).

9

the Supreme Court held that Virginia's statutory scheme, including its penalties on out-of-state marriages and voiding of marriages obtained elsewhere, "deprive[d] the Lovings of liberty without due process of law in violation of the Due Process Clause of the Fourteenth Amendment." *Loving*, 388 U.S. at 12; *see also Zablocki v. Redhail*, 434 U.S. 374, 397 n.1 (1978) (Powell, J., concurring) ("[T]here is a sphere of privacy or autonomy surrounding *an existing marital relationship* into which the State may not lightly intrude[.]") (emphasis added).

By depriving Jan and Cindy of respect for their marriage, North Dakota violates both their fundamental right to marry, and their right to equal protection. The marriage ban specifically excludes same-sex couples from North Dakota's historical tradition of extending comity to marriages validly entered elsewhere, even if such marriages could not have been entered in North Dakota. *See, e.g.*, *Luick v. Arends*, 132 N.W. 353, 360 (N.D. 1911) (comity extends to "the status of marriage, [which] is valid everywhere if valid where created"); *Pearson v. Pearson*, 606 N.W.2d 128 (N.D. 2000) (permitting recognition of out-of-state common law marriage even though such a marriage could not have been entered in North Dakota). In treating Jan and Cindy's marriage as if it never existed, North Dakota denies their constitutionally protected liberty.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion for Summary Judgment, declare that denying same-sex spouses recognition of valid out-of-state marriages violates the United States Constitution's guarantees of due process and equal protection, and put an end to the tangible and dignitary harms inflicted on Jan and Cindy and other same-sex couples in North Dakota as a result of the marriage ban.

US.54826008.03

DATED:  September 5, 2014    Respectfully submitted,

/s/ *Michael A. Ponto*
John P. Borger
Michael A. Ponto*
Christopher H. Dolan*
Emily E. Chow*
FAEGRE BAKER DANIELS
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, Minnesota 55402-3901
T: (612) 766-8012 | F: (612) 766-1600
john.borger@faegrebd.com
michael.ponto@faegrebd.com
chris.dolan@faegrebd.com
emily.chow@faegrebd.com

/s/ *Camilla B. Taylor*

Camilla B. Taylor*
Kyle A. Palazzolo*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
105 West Adams, Suite 2600
Chicago, IL 60603-6208
T: (312) 663-4413 | F: (312) 663-4307
ctaylor@lambdalegal.org
kpalazzolo@lambdalegal.org

Kenneth D. Upton, Jr.*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219-6722
T: (214) 219-8585 | F: (214) 219-4455
kupton@lambdalegal.org

Karen L. Loewy*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY  10005-3919
T: (212) 809-8585 | F: (212) 809-0055
kloewy@lambdalegal.org

ATTORNEYS FOR PLAINTIFFS

* Admitted *pro hac vice*